Eastern District of Kentucky
FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

AUG 2 - 2005

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2003-193

CLINTON D. BROWN                                          PLAINTIFF

VS.                        OPINION AND ORDER

EARTHBOARD SPORTS, USA, ET AL                            DEFENDANTS

On June 30, 2005, an oral argument was held on the motions
for summary judgment of defendants Lincoln Financial Advisors
Corp. (Doc. #61), and Jeffrey Vaughn (Doc. #62).   Plaintiff was
represented by Michael Schmidt; Defendant Jeffrey Vaughn was
represented by Donald Mooney and Pamela Ginsburg; and Defendant
Lincoln Financial Advisors Corporation was represented by Mark
Elsener.  Amy Blosser was the official court reporter.

### FACTS

Jeffrey Vaughn (Vaughn) is a stock broker who works at
Lincoln Financial Advisors Corporation (Lincoln).   In December
2001, in an attempt to gain plaintiff as a client, Vaughn called
plaintiff and told him of an opportunity to buy Earthboard stock
before it merged with VANS, a publicly traded company.[1]  Vaughn
told plaintiff that Hugh Jeffreys, the president of Earthboard,

---

[1]Vaughn had previously purchased 100,000 shares of
Earthboard stock for himself at $1.00 per share.

1

was a friend or acquaintance of his and that Jeffreys was making Earthboard stock available because he owed Vaughn a favor. (Brown Depo. p. 40). Vaughn explained that the Earthboard stock, priced at $6.00 per share, would be exchanged for a share of VANS stock, which at the time was worth at least $12.00 per share. (Brown Depo. p.39). Vaughn told plaintiff that he needed to act fast because the sale was imminent. Id.

On December 5, 2001, Earthboard, at Vaughn's instruction, faxed plaintiff a subscription agreement and wiring instructions for the purchase of Earthboard stock. (Brown Depo. p. 38). Between December 1, 2001 and December 12, 2001, Vaughn continued to call plaintiff regarding purchasing stock in Earthboard. (Brown depo. p. 52). On December 12, 2001, plaintiff signed an agreement to purchase 100,000 shares of Earthboard stock for $600,000 and faxed the agreement to Earthboard. (Brown depo. Exhibit 2). The next day, plaintiff wire transferred $600,000 to Earthboard. Id.

On December 14, 2001, Earthboard and Jeffreys issued a press release announcing a "definitive agreement to have 100% of the issued and outstanding common stock acquired by a publicly traded major footwear company (NASDAQ)." Pursuant to the merger, "Shareholders will exchange their shares for unrestricted common stock of the acquiring company on a one for one basis." (Brown Depo. p. 62; Vaughn Depo. p. 102). On January 9, 2002, Vaughn

2

faxed this press release to plaintiff from Lincoln's fax machine. (Id.).

In February 2002, Vaughn told plaintiff that he had some additional shares of Earthboard to sell. (Brown Depo. p. 73). Plaintiff agreed to buy an additional 40,000 shares of Earthboard stock. (Brown. Depo. pp. 73-4). On February 28, 2002, plaintiff completed a new subscription agreement and wire transferred $240,000 to Earthboard. (Brown. Depo. pp. 74-78). Earthboard issued a stock certificate to plaintiff for 140,000 shares.

On March 3, 2002, Vaughn purchased an additional 99,000 shares for $99,000. He actually receive 106,000 shares because Earthboard gave him an additional 7,000 shares at no cost.

During the next several months, Earthboard and Jeffreys continued to represent to Vaughn that the merger was imminent and Vaughn passed this information on to plaintiff. Earthboard, however, never merged with any company and its stock is now worthless.

### ANALYSIS

### 1. Count 1 - Violation of Federal Security LAW

### A.   Fraud under 15 U.S.C. § 77l(a)(2)[2](Section 12(a)(2) of

---

[2]15 U.S.C. § 77l(a)(2) provides, in part: Any person who offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they

3

the Securities Act of 1933)

To establish a claim under 15 U.S.C. § 77l(a)(2), also known as § 12(a)(2) of the Securities Act of 1933, plaintiff must prove that Vaughn and Lincoln offered or sold a security by means of a prospectus or oral communication, which included an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements not misleading.

Vaughn and Lincoln concede for purposes of their motions for summary judgment that Vaughn was a "seller" under the statute. Vaughn and Lincoln argue, however, that they are entitled to summary judgment on this claim because the statute applies only to public offerings of securities, not private offerings of the type at issue here.  Although plaintiff admitted in his deposition that his purchase of Earthboard stock was part of a private placement offering, he now argues that it was actually part of a public offering.[3]  (Brown Depo. II p. 154).

---

were made, not misleading (the purchaser not knowing of such untruth or omission) and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission shall be liable . . ..

[3]During discovery, plaintiff learned that eighty-three people are shareholders of Earthboard.  (Schmidt Aff., ex. 1 to plaintiff's memorandum).  As of March 28, 2002, Earthboard had issued more than 10 million shares of stock and as of May 8, 2003, it had issued more than 12 million shares.  Some shares were offered at $1 per share and others offered at $6 per share. Thus, the total offering was at a minimum 12 million dollars. (Id.).

4

It is well settled that § 12(a)(2) applies only to public
offerings. <u>Gustafson v. Alloyd Co. Inc.</u>, 513 U.S. 561 (1995).
The seller has the burden of establishing that the offering was
not public. <u>Mark v. FSC Securities Corp.</u>, 870 F.2d 331, 333 (6th
Cir. 1989). Vaughn and Lincoln argue that the fact plaintiff
admitted the offering was private bars him from now arguing that
it was a public offering.

The Sixth Circuit has not ruled on this issue. A majority
of the courts that have considered the issue, however, have held
that where the plaintiff had conceded that the offering was
private, he could not then argue the offering was public. <u>See</u>
<u>Faye L. Roth Revoc. Trust v. UBS PaineWebber, Inc.</u>, 323 F. Supp.
2d 1279, 1286-99 (S.D. Fla. 2004)(COM provided offering exempt
from registration, thus not public offering); <u>In Re WorldCom,</u>
<u>Inc. Securities Litigation</u>, 294 F. Supp. 2d 431, 454 (S.D.N.Y.
2003)(an amendment cannot change a private placement memorandum
into a prospectus); <u>Vannest v. Sage, Rutty & Co., Inc.</u>, 960 F.
Supp. 651, 654-55 (W.D.N.Y. 1997)(court found that because
offering was made by PPM and stated intent at time of offering
was to characterize offering as private, it was not a public
offering); <u>In Re JWP Inc. Securities Litigation</u>, 928 F. Supp.
1239, 1259 (S.D.N.Y. 1996); <u>ESI Montgomery County v. Montenay</u>
<u>Internat'l Corp.</u>, 899 F. Supp. 1061 (S.D.N.Y. 1995) (plaintiff
acknowledged offering made pursuant to private placement

5

memorandum thus an amended § 12(a)(2) claim would be futile).

In both Faye Roth and In Re WorldCom, the courts found that the terms contained in the Offering Memorandum compelled the court to find that the offering was private. Faye Roth, 323 F. Supp. 2d at 1294-95; In Re WorldCom, 294 F. Supp. 2d at 455. Specifically, the Offering Memorandum in In Re WorldCom contained language stating the offering was personal to each person to whom it was delivered and that it was not an offer to any other person or the public generally. The memorandum specifically stated under a section captioned "transfer restrictions," that the notes had not been registered under the Securities Act and that they could not be sold except through an exemption of the registration requirements of the Act. Id. Each note was required to bear a legend stating the security had not been registered under the Act and restricting its resale. The first page of the Offering Memorandum also explained that the notes were being offered only to qualified institution buyers. The court found these restrictions indicated that the notes were not issued in connection with a public offering.

Similarly, in the case at bar, the private placement memorandum, which plaintiff did not try to obtain from Earthboard, provided, on the first page:

> THESE SECURITIES ARE BEING OFFERED WITHOUT REGISTRATION
> UNDER THE SECURITIES ACT OF 1933, . . . OR ANY OTHER
> APPLICABLE SECURITIES LAWS, AND ARE OFFERED IN RELIANCE UPON
> THE EXEMPTIONS FROM REGISTRATION PROVIDED BY SECTION 4(2)

> AND/OR 3(B) OF THE 1933 ACT, RULE 506 UNDER REGULATION D
> PROMULGATED THEREUNDER AND EXEMPTIONS UNDER APPLICABLE STATE
> LAWS.

(Vaughn Depo. Ex. 19).

The subscription agreement, which plaintiff signed in

purchasing his shares, provides in the first paragraph:

> THE SECURITIES DESCRIBED IN THIS AGREEMENT HAVE NOT BEEN
> REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE
> 'ACT'), OR THE SECURITIES LAWS OF CERTAIN STATES, AND MAY
> NOT BE OFFERED, SOLD, TRANSFERRED, PLEDGED, HYPOTHECATED OR
> OTHERWISE DISPOSED OF EXCEPT PURSUANT TO (I) AN EFFECTIVE
> REGISTRATION STATEMENT UNDER THE ACT AND ANY APPLICABLE
> STATE LAWS, (II) TO THE EXTENT APPLICABLE, RULE 144 UNDER
> THE ACT (OR ANY SIMILAR RULE UNDER THE ACT RELATING TO THE
> DISPOSITION OF THE SECURITIES), OR (III) AN OPINION OF
> COUNSEL, IF SUCH OPINION SHALL BE REASONABLY SATISFACTORY TO
> COUNSEL TO THE ISSUER, THAT AN EXEMPTION FROM REGISTRATION
> UNDER THE ACT AND APPLICABLE STATE LAW IS AVAILABLE.

Under the heading "Representations and Warranties of the

Buyer," the subscription agreement provides, in part:

> (c) The Buyer understands that the Securities are being
> offered and sold to it in reliance on specific exemptions
> from or non-application of the registration requirements of
> federal and state securities laws and that the Company is
> relying upon the truth and accuracy of the representations,
> warranties, agreements, acknowledgments and understandings
> of the Buyer set forth herein in order to determine the
> applicability of such exemptions and the suitability of the
> Buyer to acquire the Securities.

> (d) The Buyer is aware that the Securities have not been and
> will not be registered under the Act . . . and may only be
> offered or sold pursuant to registration under the Act or an
> available exemption therefrom.

> . . .

> (f) The Buyer is an "accredited Investor" . . ..

> . . .

7

(1) The Buyer understands and agrees that the Securities
have not been registered under the Securities Act of 1933,
. . . .

In addition, under the heading "Representations and
Warranties of the Company," the subscription agreement provides:

(I) The Shares have not been registered under the Securities
Act of 1933, as amended (the "Act", Each of the Shares shall
bear the following legend:
> THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT
> BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS
> AMENDED (The 'Act"), OR THE SECURITIES LAWS OF CERTAIN
> STATES, AND MAY NOT BE OFFERED, SOLD, TRANSFERRED,
> PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF EXCEPT
> PURSUANT TO (I) AN EFFECTIVE REGISTRATION STATEMENT
> UNDER THE ACT AND ANY APPLICABLE STATE LAWS, (ii) TO
> THE EXTENT APPLICABLE, RULE 144 UNDER THE ACT (OR ANY
> SIMILAR RULE UNDER THE ACT RELATING TO THE DISPOSITION
> OF THE SECURITIES), OR (iii) AN OPINION OF COUNSEL, IF
> SUCH OPINION SHALL BE REASONABLY SATISFACTORY TO
> COUNSEL TO THE ISSUER, THAT AN EXEMPTION FROM
> REGISTRATION UNDER THE ACT AND APPLICABLE STATE LAW IS
> AVAILABLE.

. . .. This offering is not a public offering and is
intended to be made pursuant to Section 4(2) and 4(6) of the
Act and Regulation D as promulgated by the Securities and
Exchange Commission ("SEC") under the Act. . . ..

(Brown Depo. Exhibit 10).  The stock certificate issued to

plaintiff did bear the legend above stating the securities were

not registered.  (Brown Depo. Exhibit 11).   Accordingly, the

PPM and the Subscription Agreement both repeatedly stated that

the offering was not subject to registration requirements as did

the stock certificate.

Plaintiff's admission in his deposition that he believed the

8

offering to be private[4], along with the repeated disclaimers contained in the offering documents all compel the conclusion that at the time of the offering all parties intended the offering to be private. See Vannest, 960 F. Supp. at 655 (court found that because offering made by PPM and stated intent at time of offering was to characterize offering as private, it was not a public offering).

Plaintiff argues that the offering was not exempt from registration because it did not meet the requirements of Regulation D[5] and, therefore, the offering was required to have been registered.

---

[4]The plaintiff testified:
Q. . . . you understood that the Earthboard transaction to be a private placement offering, correct?
A. Yes.
Q. It was not a public offering?
A. No.
Q. And it most assuredly was not an initial public offering?
A. No.
Q. It was a private transaction, correct?
A. Yes.
Brown Depo. II. p. 154.

[5]Specifically, plaintiff argues that the Regulation D filing was made under Rule 506 which limits Earthboard to no more than 35 non-accredited investors. Thus, plaintiff argues the defendants are required to prove that no more than 35 non-accredited investors bought Earthboard stock under the Regulation D offering. 17 C.F.R. § 230.506.
Plaintiff also argues that to integrate the 2001-02 sales into the 1999 Regulation D offering several factors must be evaluated including: whether the sales were part of a single plan of financing; whether the sales involved the same class of securities, whether the sales were made during the same time period, whether the same consideration was being received and whether the sales were made for the same purpose.

9

The exclusive cause of action, however, for failure to register securities is under § 12(a)(1).  See Faye Roth, 323 F. Supp. 2d at 1299.  This court previously dismissed plaintiff's claims under § 12(a)(1) as being barred by the one year statute of limitations.  15 U.S.C. § 77m.  Accordingly, the issue of whether the offering should have been registered is not relevant to the court's § 12(a)(2) analysis.  Id.

The court finds that the offering documents expressly and repeatedly provided that the offering was not subject to registration and specifically stated that the offering was not a public offering.  The evidence is clear that at the time of plaintiff's purchase of Earthboard stock all parties understood the offering to be private.  For the foregoing reasons, the court holds that the sale of Earthboard stock to plaintiff was not a public offering.  Because the Supreme Court, in Gustafson, held that § 12(a)(2) is not applicable to private offerings, this court grants summary judgment to Vaughn and Lincoln on this claim.

B.  **Fraud under Section 10b, Rule 10b-5 and K.R.S. § 292.320**

Plaintiff alleges Vaughn and Lincoln are liable under Sections 10(b)[6] and 20 of the Securities Exchange Act (Security

---

[6]Section 10 (b) of the Securities Act prohibits the use "in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . .." 15 U.S.C. § 78j(b).

Act), Rule 10b-5[7] promulgated thereunder and K.R.S. § 292.320.
The parties agree that the purpose and language of the Kentucky
Blue Sky Law, K.R.S. § 292.320, are identical to those of Rule
10b-5. <u>Brewer v. Lincoln Intl. Corp.</u>, 148 F. Supp. 2d 792, 812
(W.D. Ky. 2000) (citing Carothers v. Rice, 633 F.2d 7, 15 (6th
Cir. 1980)).  Thus, it is appropriate to discuss these claims
together.

Section 10(b) and Rule 10b-5 prohibit "'fraudulent,
material misstatements or omissions in connection with the sale
or purchase of a security.'" <u>Miller v. Champion Enterprises,
Inc.</u>, 346 F.3d 660, 661 (6th Cir. 2003) (quoting Morse v.
McWhorter, 290 F. 3d 795 (6th Cir. 2002).  Section 10(b) applies
to any purchase or sale of securities by any person.  15 U.S.C. §
78j(b).  The rule applies regardless of whether the sale is a
private or public offering.  <u>Id</u>.  Therefore, the fact this court

---

[7]Rule 10b-5 was promulgated in connection with Section 10(b)
and states:
 It shall be unlawful for any person, directly or indirectly, by
the use of any means or instrumentality of interstate commerce,
or of the mails or of any facility of any national securities
exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit
to state a material fact necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which
operates or
would operate as a fraud or deceit upon any person, in connection
with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

has found that plaintiff's purchase of Earthboard stock was pursuant to a private offering does not affect the analysis of this claim.

In order to prevail on a Section 10(b)/Rule 10b-5 claim, the plaintiff must establish: 1) that Vaughn made a misstatement or omission concerning a material fact; 2) that it was made with scienter; 3) that the plaintiff justifiably relied upon the alleged misrepresentations or omissions; and 4) that plaintiff's damages were caused by his reliance on the misrepresentation. Farley v. Earnst & Young L.P., 392 F.3d 220, 226 (6th Cir. 2004); Helwig v. Vencor, Inc., 252 F.3d 540, 554 (6th Cir. 2001); Wright v. National Warranty Co., 953 F.2d 256, 261 n.1 (6th Cir. 1992); In re Kindred Healthcare Inc. Sec. Litig., 299 F. Supp. 2d 724, 730-31 (W.D. Ky. 2004).

In his complaint, the plaintiff asserts that Vaughn misrepresented his relationship with Jeffreys and the reason he was given the opportunity to offer Earthboard stock to friends and family. In the hearing, however, plaintiff admitted that Vaughn's misrepresentation of his relationship with Jeffrey's was not the cause of the loss[8]. Instead, plaintiff asserts that the

---

[8]The following colloquy took place during the June 30, 2005 hearing:
**The Court:** Your argument shifted somewhat from your brief where you kept talking about the fact that [Vaughn] said . . . Jeffreys was a good buddy.
**MR. Schmidt** [plaintiff's counsel]: Well that wouldn't - -
**The Court:** And that would not cause the loss. Might go to

actionable misrepresentation was Vaughn's statements that Earthboard was about to be acquired by VANS, a publicly traded company, that the sale was imminent and plaintiff needed to act quickly to get in on the deal.  The plaintiff's claim fails because he cannot establish the scienter or causation elements of a § 10(b)/Rule 10b-5 claim.

  1. Scienter

  The Sixth Circuit has outlined three distinct requirements for establishing scienter in fraud actions, each depending on the type of statement that is alleged to have been made.  Miller v. Champion Enterprises, Inc., 346 F.3d 660, 672 (6th Cir. 2003). First, with respect to forward looking statements that are accompanied by meaningful cautionary language, the safe harbor provision in the Private Securities Litigation Reform Act (PSLRA) makes state of mind irrelevant and such statements are not actionable.  Id.  Second, with respect to "'forward looking statements' that are not accompanied by meaningful cautionary language, actual knowledge of their false or misleading nature is required."  15 U.S.C. § 78u-5(c)(1)(B).  "Finally, for statements of present or historical fact, the state of mind required is recklessness."  Id.; PR Diamonds, Inc. v. Chandler, 364 F.3d 671,

---

his - - make him feel more comfortable buying it but it didn't cause the failure of the company if [Hugh] Jeffreys was or wasn't his good buddy.
  **Mr. Schmidt**: That's true.  I agree with that, . . ..

13

681 (6th Cir. 1994).   For purposes of this motion, the court will presume that the statements were of a present or historical fact and, therefore, a showing of recklessness is required.

The Sixth Circuit has defined "recklessness" as "'highly unreasonable conduct which is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it'"  Miller, 346 F.3d at 672 (quoting Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1025 (6th Cir. 1979); PR Diamonds, 364 F.3d at 681.  "Recklessness is 'a mental state apart from negligence and akin to conscious disregard.'"  PR Diamonds, 364 F.3d at 681 (quoting In re Comshare, Inc. Securities Litigation, 183 F.3d 542, 550 (6th Cir. 1999).

Plaintiff argues that Vaughn's misrepresentations regarding the imminent acquisition of Earthboard Stock by VANS were made recklessly.  Plaintiff admitted, however, that Vaughn believed the VANS acquisition of Earthboard was imminent.  (Brown Depo. p. 59-60).  Plaintiff testified:

Q. Did you get the impression in your conversations with [Vaughn] that [Vaughn] certainly believed - -

A. Absolutely

Q. Okay

A. He believed Vans was purchasing Earthboard.

.  .  .

Q.  Did you get the impression in your conversations with

14

Mr. Vaughn that he certainly believed there was going to be this acquisition by Vans of Earthboard.

A. Yes.

. . .

A. . . . [Vaughn] was convinced that this was going to lead to us having a significant business relationship with Lincoln.

Q. Okay. So [Vaughn] had no reason not to try to be up front with you about it and make sure you made money?

A. That's correct.

(Brown Depo. pp. 59-61).

Approximately 45 days later, plaintiff's deposition was continued and plaintiff again testified that Vaughn believed the acquisition was imminent:

A. [Vaughn] very much wanted to have an ongoing and more substantial relationship with me. He brought this to me as a sure fire way of proving his value, that he had put his own money in there. It seemed logical that what he was telling me was truthful. Why would he bring me a transaction that would backfire if his ultimate goal was to have a recurring relationship with me.
. . .
Q. . . . [I]t's my understanding that you believe that [Vaughn] in fact believed all the things that he was telling you about Earthboard; is that correct?

A. Yes.

Q. That Jeff [Vaughn] did not lie to you about Earthboard?

A. No. No.

Q. That -do you know of any instance in which [Vaughn] may have told you a half truth about Earthboard?

A. I am not aware of anything.

Q. Okay. So as far as you're concerned, [Vaughn] was totally

above board with you about Earthboard?

A. I'm not aware of him misrepresenting the facts.

Q. Okay.  And he genuinely believed everything he was telling you?

A.  As far as I know.

(Brown Depo. II. 140-42).  Despite this clear testimony, plaintiff now argues that Vaughn's misrepresentations meet the scienter element of a § 10(b)/10b-5 claim.

As explained above, the Sixth Circuit has held "Recklessness is defined as 'highly unreasonable conduct which is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.'"  Id. at 681 (quoting Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1025 (6th Cir. 1979)).

Here, plaintiff alleges Vaughn was reckless in promoting Earthboard after only two phone conversations with Jeffreys.  He argues that Vaughn was a con man and that Vaughn's "unmerited vouching for Jeffreys was reckless."  Plaintiff must set forth some evidence to demonstrate an issue of material fact as to whether Vaughn acted with a "mental state apart from negligence and akin to conscious disregard."  Id.  at 550.  Plaintiff has failed to make such a showing.

In the case at bar, the evidence establishes that prior to purchasing his own shares, Vaughn reviewed the PPM and

16

Confidential Information Statement from Earthboard. (Vaughn Depo. pp. 39, 50). He did not blindly enter into this investment.

Plaintiff testified that in early December 2001, approximately a month after Vaughn's initial purchase of Earthboard stock, Vaughn called plaintiff and told him that he wanted to prove how valuable he could be as a financial advisor. Plaintiff testified that Vaughn told him that he had an investment opportunity in a privately held company called Earthboard that was imminently going to be sold to VANS, a publicly traded company. (Brown Depo. p. 32). Plaintiff testified he discussed the opportunity with Vaughn over lunch, conducted a short investigation into VANS and then decided to buy Earthboard stock. (Brown Depo. pp. 38-39).

Shortly after plaintiff made his first investment in Earthboard, Earthboard released a press release announcing its "definitive agreement" to merge with a publicly traded company. Plaintiff has not pointed to any evidence to establish that Vaughn had any reason to doubt the accuracy of the press releases or Jeffreys's statements. To the contrary, the evidence all points to facts that would lead a reasonable person to believe a sale was, in fact, imminent.

There is also no evidence that Vaughn knew or should have known that Jeffreys had fabricated the press releases or that they were otherwise untrue. There is simply no evidence that

17

Vaughn's communications with plaintiff regarding the Earthboard/VANS merger were "highly unreasonable conduct which is an extreme departure from the standards of ordinary care."

There is also no evidence that Vaughn ignored any red flags, let alone multiple red flags, that should have warned him to question what Jeffreys or Earthboard's press releases were reporting. PR Diamonds, 364 F.3d at 686-87. Where a defendant is completely unaware of the scheme to defraud, he cannot be found to have the requisite scienter under § 10(b). See Sanders Confectionary Prod., Inc. v. Heller Fin., Inc., 973 F.2d 474, 486-87 (6th Cir. 1992); Smith v. American Nat'l Bank & Trust Co., 982 F.2d 936, 944 (6th Cir. 1992).

The plaintiff has failed to set forth sufficient facts to establish an issue of material fact that Vaughn acted with the requisite scienter under the statutes.

2.   Causation

To prevail on a § 10(b) claim, the plaintiff must also establish not only transactional causation - that the misrepresentations caused him to buy the stock, but also loss causation - that the misrepresentation was the cause of the loss. Campbell v. Shearson/American Exp. Inc., 1987 WL 44742, Nos. 85-1703 & 85-1714 (6th Cir. 1987)(no recovery if investment decision induced by misstatement but misstatement not proximate cause of loss). It is not enough that the misrepresentation "touch upon"

18

a loss, it must cause the loss.  <u>Dura Pharmaceuticals, Inc. v.</u>
<u>Broudo</u>, __U.S.__, 125 S. Ct. 1627 (April 19, 2005)(analysis of
10b-5 liability under fraud on market theory).  The plaintiff
must establish that Vaughn's misrepresentations proximately
caused the plaintiff's economic loss.  <u>Id</u>. at *6.

Here, plaintiff alleges the misrepresentations about the
non-existent deal with VANS was the cause of his loss.  The basis
of his argument is but for Vaughn telling him of the imminent
acquisition, he would not have purchased Earthboard.  The problem
is that, as shown by the discussion in other parts of this
opinion, scienter for this representation is lacking.

The only misrepresentation for which there was scienter was
Vaughn's statement that he was a close friend of Hugh Jeffreys
and that because of that relationship Jeffreys was letting Vaughn
and his friends, including the plaintiff, in on a good deal.  The
non-existence of such a relationship was not the proximate cause
of the loss because it did not cause the de-valuation of the
shares.  It was the failure of the merger that caused the de-
valuation, and there was no scienter for Vaughn's representations
concerning the imminence of the merger.

"If the investment decision is induced by misstatements or
omissions that are material and that were relied upon by the
claimant, but are not the proximate reason for his pecuniary
loss, recovery under the Rule is not permitted."  <u>Campbell</u>, 1987

19

WL 44742 at **2.

Plaintiff has not established that the misrepresentations were the proximate cause of his loss. As the plaintiff has not established Vaughn acted with the requisite scienter or that the misrepresentations were the cause of plaintiff's loss, Vaughn is entitled to summary judgment on plaintiff's § 10(b), 10b-5 and K.R.S. § 292.320 claims.

### C. Liability under Section 15 of the Securities Act of 1933[9] & § 20 of the Securities & Exchange Act of 1934[10].

Both the 1933 and 1934 Acts provide for controlling person liability against those that directly or indirectly controlled any person found liable under any rule or regulation under the Acts, unless the controlling person acted in good faith and did not directly or indirectly induce the act constituting the

---

[9]Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist. 15 U.S.C. § 77o.

[10]Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

20

violation.  See 15 U.S.C. § 77o; 15 U.S.C. § 78t(a).

"Liability of a 'controlling person' is derivative, and a 'controlling person' can therefore only be liable when the entity he or she is controlling has violated securities laws."  In re Kindred Healthcare, Inc., Sec. Litig., 299 F. Supp. 2d 724, 742 (W.D. Ky. 2004) (citing In re Comshare, 183 F.3rd  at 554 n. 11). Accordingly, in order to prevail on a § 15 or § 20 claim, the plaintiff must first prove that Vaughn violated a rule or regulation under either the 1933 or 1934 Acts respectively.

As set forth in previous sections of this opinion, the Plaintiff has not established a viable claim against Vaughn for a violation of either Act.   Therefore, Lincoln, Vaughn's employer, cannot be held liable for securities fraud as a "controlling person" under § 20(a) since there is no viable claim for § 10(b) and/or Rule 10b-5 liability against Vaughn.  Similarly, there is no § 15 liability since there is no viable claim against Vaughn under § 12(a)(2).   Accordingly, Lincoln is entitled to summary judgment on the controlling person claim.

   2.  **Count 2- Violations of Kentucky Securities Act**

      A.  **Failure to Register Earthboard Stock in Kentucky**

Plaintiff alleges that Vaughn and Lincoln are liable for offering to sell Earthboard stock in Kentucky when it was not

registered as mandated by K.R.S. §292.340.[11]  Plaintiff's claim,

however, is preempted by the National Securities Market

Improvement Act of 1996 (NSMIA), which preempts any state from

requiring registration of any security that is a "covered

security".  15 U.S.C. § 77r(a)(1)(A).[12]

As relevant to this case, a security is "covered" under the

NSMIA if it is sold in a transaction not involving a public

offering.  15 U.S.C. § 77r(b)(4)(D) (West Supp. 2004); 15 U.S.C.

§ 77d(2).  Vaughn and Lincoln argue that since Earthboard filed

the requisite Form D with the SEC in November 1999, pursuant to

Regulation D of § 4(2) of the 1933 Act, the sale of Earthboard

stock is a private offering and thus, a "covered security."

Plaintiff argues that the 1999 Form D filing was only effective

for six months and does not cover the 2001-02 purchases of

Earthboard stock.  Plaintiff also argues that there are other

errors with respect to Earthboard's Regulation D filing and,

_____

[11]K.R.S. 292.340 states: Registration of securities.  It is
unlawful for any person to offer or sell any security in this
state, unless the security is registered under this chapter, or
the security or transaction is exempt under this chapter, or the
security is a covered security.

[12]15 U.S.C. § 77r(a)(1)(A) provides: Except as otherwise
provided in this section, no law, rule, regulation, or order, or
other administrative action of any State or any political
subdivision thereof-
     (1) requiring, or with respect to, registration or
qualification of securities, or registration or qualification of
securities transactions, shall directly or indirectly apply to a
security that —
     (A) is a covered security; . . ..

22

thus, Vaughn and Lincoln are not entitled to its protections.

This precise issue was addressed by a Florida district court in Temple v. Gorman, 201 F. Supp. 2d 1238 (S.D. Fla. 2002). In Temple, the plaintiff asserted claims under Florida's unregistered securities law, which is substantively similar to K.R.S. § 292.340. Despite the fact the issuer failed to comply fully with Regulation D, thereby jeopardizing its exemption from SEC registration, the court held the securities were offered or sold pursuant to a rule or regulation adopted under § 4(2) and, therefore, were "covered securities."

In reaching its decision, the court looked to the legislative history of The National Securities Market Improvement Act of 1996 (NSMIA). The court noted that Congress explained that "securities sold in private transactions under Section 4(2) of the Securities Act would be 'covered securities,' and thus preempted, if offered or sold pursuant to a Commission rule or regulation adopted under such section 4(2)." Relying on Congress' explanation, the court held that "[r]egardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506, the securities sold to Plaintiffs are federal 'covered securities' because they were sold pursuant to those rules." Id. at 1243-44. See also Lillard v. Stockton, 267 F. Supp. 2d 1081, 1115-16 (N.D. Okla. 2003) (citing Temple, found state law registration claims

23

preempted by NSMIA).  No other courts have ruled on this precise issue.

In the case at bar, Earthboard filed a Regulation D form on November 15, 1999.  The subscription agreement identified the transaction as being made pursuant to Regulation D and the plaintiff admitted he believed the transaction to be a private offering.  Pursuant to the only judicial decision that specifically addresses the issue, the fact the sale was made pursuant to Regulation D is sufficient even if the private placement did not meet the requirements for a proper Regulation D exemption.  <u>Temple</u>, 201 F. Supp. 2d at 1243-44.  Accordingly, the court finds that the Earthboard stock was a "covered security" and, therefore, Vaughn and Lincoln are entitled to summary judgment on this claim.

**B. Misrepresentations and Omissions under Kentucky Law**

Plaintiff alleges that Vaughn and Lincoln are liable under K.R.S. 292.480(1)[13] for offering to sell or selling a security by

---

[13]K.R.S. 292.480(1) provides: Any person, who offers or sells a security in violation of this chapter or of any rules or orders promulgated hereunder or offers or sells a security by means of any untrue statement or omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading (the buyer not knowing of the untruth or omission) and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment costs and reasonable attorneys' fees, less the amount of any income received on the

24

means of an untrue statement of a material fact or an omission to state a material fact. The statute provides, however, that there is no liability if the seller sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission. K.R.S. 292.480(1).

In the case at bar, the plaintiff has admitted that Vaughn did not know the statements he was relaying were untrue. In addition, plaintiff has not presented any evidence to demonstrate that Vaughn had any reason to doubt either what Jeffreys was telling him or what he was reading in the press releases. In fact, Vaughn was also a victim of Jeffreys and Earthboard.

Accordingly, The court finds Vaughn and Lincoln are entitled to summary judgment on this claim.

### 3. Count 3 - Common Law Fraud

Plaintiff concedes that Kentucky's Blue Sky Law provides the exclusive remedy for fraud in the sale of securities and agrees to voluntarily dismiss this claim. Cali-Ken Petroleum Co., Inc. v. Miller, 815 F. Supp. 216 (W.D. Ky. 1993).

### 4. Count 4- Breach of Fiduciary Duties

Plaintiff alleges that Vaughn and Lincoln are liable for breaching their fiduciary duties to plaintiff. Plaintiff argues that Vaughn and Lincoln had superior knowledge, skill, judgment, and experience in the securities market and owed plaintiff a duty

---

security, upon the tender of the security, . . . .

to recommend suitable investments, to disclose all facts and refrain from misleading plaintiff.

The Sixth Circuit has defined what is a fiduciary relationship under Kentucky law. <u>Sallee v. Fort Knox National Bank</u>, 286 F.3d 878 (6th Cir. 2002). In <u>Sallee</u>, the court stated:

> Under Kentucky law, a fiduciary relationship is 'founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person *to act primarily for another's benefit* in matters connected with such undertaking' <u>Steelvest, Inc. V. Stansteel Serv. Ctr. Inc.</u>, 807 S.W.2d 476, 485 (Ky. 1991)(emphasis added).
> In <u>Steelvest</u>, the Kentucky Supreme Court described a fiduciary relationship:
> 'The relation[ship] may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and *with due regard to the interest of the one reposing confidence.*'"
> . . .
> Fiduciary relationships arise when circumstances and the relationship of the parties show the parties understood and agree that confidence is reposed by one party and trust accepted by the other. Fiduciary relationships can be informal, but they must evidence circumstances showing both parties agreed that one party would be acting in the interest of the other.

<u>Sallee</u>, 286 F.3d at 892-93. "A generalized trust in other businessmen and businesswomen cannot create a fiduciary relationship." <u>Id</u>. at 895.

The Sixth Circuit has held that there are circumstances under which a stock broker has a fiduciary relationship with his customer. <u>See, J.C. Bradford Futures, Inc. v. Dahlonega Mint, Inc.</u>, 907 F.2d 150 (6th Cir. 1990) (broker operating

26

discretionary trust is fiduciary, but not fiduciary duty between broker and client of nondiscretionary commodity trading account); Street v J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1990) ("a stock or commodities broker is the agent of the customer and a fiduciary relationship exists between them").

To establish that a fiduciary relationship existed, the party claiming the relationship must first show the relationship existed before the transaction that is subject of the action. Sallee, 286 F.3d at 892. Second, the party claiming the fiduciary relationship must establish that reliance was not merely subjective. Id. Lastly, the party claiming the fiduciary relationship must establish the nature of the relationship imposed a duty upon the fiduciary to act in the principal's interest, even if such action were to the detriment of the fiduciary. Id.

In the case at bar, plaintiff has not presented evidence to establish a prior fiduciary relationship existed with either Vaughn or Lincoln prior to the Earthboard transaction. Plaintiff specifically testified that he did not have a business relationship with Vaughn or Lincoln prior to December 2001. (Brown Depo. pp. 139, 163-64). Plaintiff testified that he never opened an account at Lincoln, never had an investment advisor agreement with either Lincoln or Vaughn, and never had an asset management agreement with Lincoln. (Brown Depo. pp. 163-64).

27

Plaintiff admitted he was only a prospect and he believed Vaughn gave him the information on Earthboard to convince him that he should do business with Vaughn in the future. (Brown Depo. pp. 64, 139-40). Thus, plaintiff cannot establish he had an existing fiduciary relationship with Vaughn or Lincoln prior to the Earthboard transaction.

Plaintiff also has not set forth any facts that establish that his relationship with Vaughn imposed a duty on Vaughn to act in plaintiff's best interest, even if the action would be to the detriment of Vaughn.

The court finds that the plaintiff has not presented any evidence to establish a fiduciary relationship existed between himself and either Lincoln or Vaughn.  Accordingly, the court will enter summary judgment in favor of Vaughn and Lincoln on this claim.

5.  **Count 5- Negligence**

Plaintiff alleges that Vaughn's violation of the National Association of Securities Dealers, Inc.'s ("NASD") rules constitutes negligence and his violation of the Kentucky Revised Statutes constitutes negligence per se.  Plaintiff argues that although there is no private right of action for violations of the NASD rules, the rules establish the duties owed by Vaughn to plaintiff, which, if breached, constitute negligence. Specifically, plaintiff alleges Vaughn violated NASD rules by

28

"selling away[14]" the Earthboard stock.

Plaintiff has failed to allege sufficient facts to establish Vaughn owed any legal duty to him. Plaintiff confuses "duty" with "standard of care." Although Lincoln's internal rules and the NASD rules may be evidence of the proper "standard of care" an agent owes a client, these Rules do not, in and of themselves, create the requisite common law "legal duty" to the public at large.

The only case cited by the plaintiff in support of this argument is not on point. In <u>Thropp v. Bache Halsey Stuart Shields, Inc.</u>, 650 F.2d 817 (6th Cir. 1981), the court held simply that "evidence of [internal] rules may be used against the defendant to establish the correct standard of care." <u>Id</u>. at 820. <u>Thropp</u> does not hold that NASD or Lincoln rules create the legal duty necessary to give rise to a cause of action in tort. Instead, the court in <u>Thropp</u> found that the defendant stockbroker had a fiduciary duty to the plaintiff to adhere to the correct standard in the management of her account. The court found the defendant's duty arose from the admitted fiduciary relationship between the stockbroker and his client. <u>Id</u>. at 819-20.

Without a legal duty, there can be no actionable negligence claim. <u>LeMaster v. Appletree Plaza Limited Partnership</u>, 2005 WL

---

[14]"Selling away" refers to a broker soliciting purchases of a security not held or offered by his brokerage firm.

327103, Nos. 2003-CA-002773 & 2004-CA-000033 (Ky. App. 2005); Mullins v. Commonwealth Life Ins. Co., 839 S.W. 2d 245 (Ky. App. 1992) (insurance agent has no legal duty to advise insured on optional coverage). Plaintiff has not established that Vaughn owed him a legal duty with respect to the Earthboard transaction.

Plaintiff's negligence per se claim also fails because, as discussed in previous sections of this opinion, the court finds that Vaughn did not violate any Kentucky statutes.

Additionally, to the extent that plaintiff asserts a negligent misrepresentation claim, this claim is barred because the Kentucky's Blue Sky Law provides the exclusive remedy for either intentional or negligent misrepresentations in the sale of securities. City of Owensboro v. First U.S. Corp., 534 S.W.2d 789, 792 (Ky. 1975).

Accordingly, Vaughn is entitled to summary judgment on plaintiff's negligence claim.

### 6. Lincoln's common law liability for Vaughn's conduct

Plaintiff argues Lincoln is liable for Vaughn's actions under either a vicarious liability or respondeat superior theory. Since the court has concluded that Vaughn is not liable to plaintiff, Lincoln can have no such liability. See City of Louisville v. Bergel, 610 S.W.2d 292, 293 (Ky. 1980) (no liability on part of employee, thus no liability on part of employer). Accordingly, Lincoln is entitled to judgment on this

30

claim.

The court being otherwise sufficiently advised,

**IT IS ORDERED** that:

1.   Defendants Jeffrey Vaughn and Lincoln Financial Advisors' motions for summary judgment (Docs. #61 & 62) be, and they hereby are, **GRANTED**; and

2.   Earthboard Sports USA and Hugh Jeffreys' motions to join in their co-defendants' motions (Docs. 68-69) be, and they hereby are, **denied as moot** as default judgment has already been entered against these two defendants; and

3. A separate judgment shall enter concurrently herewith. This ___2d___ day of August, 2005.

_William O. Betelsman_

**WILLIAM O. BERTELSMAN, JUDGE**

TIC: 1 hr.

31